[No. E016659. Fourth Dist., Div. Two. Jan. 23, 1997.]

LETICIA ARCINIEGA, Plaintiff and Appellant, v.
BANK OF SAN BERNARDINO, N.A., Defendant and Respondent.

COUNSEL

Richard L. Quint for Plaintiff and Appellant.

Gresham, Varner, Savage, Nolan & Tilden and Bart W. Brizzee for Defendant and Respondent.

OPINION

McDANIEL, J.*—Leticia Arciniega (plaintiff) once operated a check-cashing business, styled as Community Financial Services, and in connection therewith maintained a commercial bank account with Bank of San Bernardino, N. A. (defendant). In October of 1986, plaintiff and defendant, along with other merchants in San Bernardino, were the victims of a bogus check passing scam perpetrated by El Faro Construction Co. (El Faro).

The scam worked like this. El Faro opened a checking account with defendant. Over a period of time, there were issued to purported employees of El Faro what appeared to be bona fide payroll checks. These checks were periodically presented for cashing at plaintiff's place of business. On these occasions, telephone calls were made from plaintiff's business to defendant to verify that there were funds on deposit in the El Faro account to cover the checks. After this pattern of regularity had been established, El Faro struck. On a Friday, El Faro checks aggregating $7,353.37 were presented for cashing at plaintiff's business. Telephone calls to defendant confirmed that these checks would clear. The checks were cashed and, later that day, these same checks were deposited by plaintiff in her account with defendant. However, just before its 6 p.m. closing, someone appeared at defendant bank and succeeded in withdrawing all funds from the El Faro account.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

The following Monday was a holiday. On Tuesday, when defendant discovered what had happened, it debited plaintiff's account pro tanto and returned the checks. Thereafter, defendant refused plaintiff's demand that her account be credited in the amount of $7,353.37, the aggregate amount of the El Faro checks, as noted, which she had cashed and then deposited in her account with defendant.

The resulting dispute led plaintiff to retain Attorneys Brunick and Pyle to commence litigation against defendant. Such suit was eventually filed against defendant about a year after the scam had been perpetrated and was only the first of *three* separate lawsuits which figure in this appeal. In the first of these three actions, plaintiff alleged her damages to be $7,353.37, nothing more, and prayed for their recovery.

For reasons not fully revealed by the record, the action above noted, prepared and filed by Attorneys Brunick and Pyle, was dismissed without prejudice and, for a time, the fact of such dismissal was unknown to plaintiff. Her discovery of the unauthorized dismissal eventually led plaintiff to file an action against her former attorneys for legal malpractice. *This was the second* of the three actions figuring in this appeal. In this action, plaintiff alleged damages of $137,543, predicated upon nonspecific, boilerplate allegations of fraud and deceit, plus the infliction of emotional distress. A first amended complaint filed in this second action raised the price tag of plaintiff's grievance against her former attorneys to $265,498.53. Such grievance was later embellished by the allegations in a second amended complaint.

According to plaintiff's deposition testimony, given in the underlying (current and third) action, she settled the legal malpractice action against her former attorneys for $60,000 and it was then ordered dismissed.[1] Thus fortified, plaintiff, with new counsel, resumed prosecution of the underlying (current) action against defendant. In terms of chronology, however, the underlying (current) action had actually been filed *before* the legal malpractice action. However, it had remained dormant until after settlement of the legal malpractice action.

In the third (the underlying) action, plaintiff again alleged, as in the first action, the deposit of $7,353.37 in checks with defendant, followed by defendant's refusal to pay plaintiff such sum. However, expanding upon the

---

[1] The minute order by which the dismissal was accomplished did not specify whether it was with or without prejudice. However, because plaintiff does not contend otherwise, we conclude that the dismissal was *with prejudice*.

objective of the earlier (first) action against defendant, plaintiff, *without providing any details*, alleged in the complaint filed in the underlying (current) action that as "a legal result" of defendant's refusal to pay her the sum of $7,353.37 she had incurred $253,063.68 in *"economic"* damages.

The underlying (current) action, in which this appeal was taken, was resolved in the trial court by summary judgment entered in favor of defendant. Several grounds were urged in support of the motion. Choosing from among these, the trial court reasoned that plaintiff's receipt of $60,000 in settlement of the legal malpractice action barred plaintiff from further recovery against the bank, under the "case-within-a-case" doctrine.

Because defendant, in support of its motion, succeeded in showing that it had a complete defense to plaintiff's action by reason of a retraxit (*post*), the burden shifted to plaintiff to show, if she could, that a triable issue of one or more material facts remained to be resolved as to such defense. (Code Civ. Proc., § 437c, subd. (o)(2).). In turn, because plaintiff *failed to submit any evidentiary filings* in opposition to the motion for summary judgment, other than copies of so-called record of return items (*post*), she failed to raise an issue of material fact requiring a trial of the affirmative defense. Thus, regardless of the theory of plaintiff's argument that there remains "a triable question of fact of plaintiff's total damage caused by the bank," because of the total absence of evidentiary filings by plaintiff, *the trial court was required to grant the motion,* as mandated by section 437c, subdivision (c) of the Code of Civil Procedure. In turn, we have no option other than to affirm the judgment.

### Synopsis of Trial Court Proceedings

The underlying action, No. 263149, was filed April 24, 1991. However, a first amended complaint was not filed until October 15, 1993; yet certain filings in other actions had occurred before the two foregoing filings noted. More specifically, plaintiff had retained Attorneys Brunick and Pyle to file an action (Arciniega v. Bank of San Bernardino (Super. Ct. San Bernardino County, 1987, No. 240019)) against defendant on October 9, 1987. Its objective was to recover the aggregate amount of the El Faro checks, $7,353.37, which defendant had returned to plaintiff after debiting her account in this amount. (Plaintiff's grievance against defendant dates from October 14, 1986, when defendant refused to credit plaintiff's account with the amount of the El Faro checks or to pay her such amount.) The initial action by plaintiff against defendant, No. 240019, was dismissed without prejudice on April 18, 1988.

About three years later, on April 24, 1991, as above noted, plaintiff filed the underlying action, No. 263149, against defendant. Thereafter, on January 3, 1992, plaintiff filed yet another action (Arciniega v. Brunick (Super. Ct. San Bernardino County, 1992, No. 268648)) this one for legal malpractice against Brunick and Pyle. On September 15, 1993, for a consideration of $60,000, this action, No. 268648 (against her former attorneys), was settled and ordered dismissed. (See fn. 1, *ante.*) A month later, a first amended complaint was filed in the underlying action.

This unverified pleading, in the first instance, reflected the allegations contained in plaintiff's initial complaint filed by her former attorneys against defendant in No. 240019 about six years earlier. More particularly, the complaint in No. 240019, alleged, "9. At or about 5:00 p.m. on October 10, 1986, plaintiff deposited the El Faro Construction checks in the amount of $7,353.37 in its account with defendant BANK OF SAN BERNARDINO. [¶] 10. At approximately 6:30 p.m., all monies were withdrawn from the El Faro Construction account, without payment on any of the checks drawn against that account that day, including those previously deposited during the day by plaintiff. [¶] 11. As a proximate result of the negligence of defendants, and each of them, plaintiff was damaged in the sum of $7,353.37, together with interest and expenses in a sum to be proven at trial, together with interest for loss of deposits, related expenses and lost income."

In this current effort against defendant, plaintiff likewise alleged, "4. Plaintiff, LETICIA ARCINIEGA, has and at all times hereinafter mentioned had on deposit with defendant, 'BSB[,'] the sum of $7,353.37 at its branch located at 505 West Second Street, San Bernardino, California. [¶] 5. Defendant, 'BSB[,'] has intentionally refused and failed and still fails and refuses to pay plaintiff, LETICIA ARCINIEGA, the sum of $7,353.37, or any part thereof although plaintiff has demanded and continues to demand of defendant that it pay the same; the sum of $7,353.37 is due, owing and unpaid from defendant to plaintiff since October 14, 1986, with legal interest at the rate of $2.04 per day until paid."

However, the current effort in No. 263149 has been expanded beyond that in No. 240019 to include allegations that "6. As a legal result of the defendant's [*sic*], and each of their, refusal and failure to pay said sum of deposit, plaintiff, LETICIA ARCINIEGA, has incurred $253,063.68 in economic damages, with legal interest thereon, representing loss of business income, re-financing costs [*sic*], interest payments and attorney's fees. [¶] Plaintiff, LETICIA ARCINIEGA, anticipates she will continue to incur attorney's fees and legal costs, the exact amount of which shall be proven at trial. [¶] 7. As

a further legal result of defendant's [*sic*], and each of their, refusal and failure to pay said sum of deposit, plaintiff, LETICIA ARCINIEGA, was unable to remain in the check cashing business and has lost profits on said business in an amount to be proven at trial. [¶] 8. As a further legal result of defendant's [*sic*], and each of their, refusal and failure to pay said sum of deposit, plaintiff, LETICIA ARCINIEGA, has suffered stress, humiliation, embarrassment, anxiety, causing her physical illness, sleeplessness, physical bodily pain and suffering, all to her general damages in excess of the jurisdictional limits of this court, according to proof at trial."

These allegations in the first amended complaint filed in No. 263149, the underlying (current) action, closely paralleled those plaintiff had set forth in the second amended (final) complaint filed against her former attorneys in the legal malpractice action, No. 268648, which was settled. For example, paragraph 5 in No. 268648 reads: "On or about October 9, 1987, plaintiff retained defendants and defendant firms to represent plaintiff as plaintiff's attorneys at law to bring a legal action against Bank of San Bernardino, N.A., A National Banking Association, for damages caused plaintiff by said bank based on the bank's wrongful conduct on or about October 10, 1986. Defendants accepted the above described employment and agreed to perform the above described employment. On or about October 9, 1987, defendants caused to be filed with this court, case number 240 019, a copy of which is attached hereto and marked as 'Exhibit A[.']"

Further, paragraph 10 in No. 268648 reads: "As a proximate result of such negligence, plaintiff has been damaged in the sum of $265,498.53, with legal interest of ten percent (10%), from April 18, 1988[,] thereon until paid, plus legal fees and costs, in an amount to be proven at trial."

In No. 263149, the underlying (current) action, defendant's answer included a general denial of all allegations of the first amended complaint, pursuant to section 431.30, subdivision (d) of the Code of Civil Procedure. Otherwise, in its answer, defendant alleged 25 affirmative defenses. Of significance to the disposition of the case in the trial court by means of summary judgment was: ". . . [¶] *Twentieth Affirmative Defense* [¶] If it should be determined that defendant is liable in any manner for the injuries and/or damages allegedly sustained by plaintiff, which injuries and/or damages are denied, plaintiff's recovery from defendant should be offset, reduced, diminished, and/or *barred by reason of her settlement* in case number 268648 entitled *Leticia Arciniega vs. William J. Brunick, et al.*" (Italics added.)

With the case thus at issue, defendant noticed a motion for summary judgment on the stated ground that "as to Plaintiff's First Amended Complaint, there are no triable issues of material fact, and Defendant is entitled to judgment as a matter of law."

As required by statute, defendant filed a separate statement of undisputed material facts. Without including here a recital of the supporting evidence for such facts, those relevant to our disposition of the appeal were: "30. On or about October 9, 1987, plaintiff filed case number 240019 titled *Leticia Arciniega, etc. vs. Bank of San Bernardino, et al.*, alleging causes of action for negligence and declaratory relief. . . . [¶] 31. On or about April 18, 1988, case number 240019 was dismissed without prejudice. [¶] . . . [¶] 35. On or about January 3, 1992, plaintiff filed an action titled *Leticia Arciniega vs. William J. Brunick, et al.*, San Bernardino case number 268648 containing causes of action for professional negligence, breach of fiduciary duty, fraud, and negligent misrepresentation. . . . [¶] 36. On or about September 23, 1993, plaintiff filed the First Amended Complaint in action 268648 containing the same causes of action. . . . [¶] 37. On or about January 15, 1993, plaintiff filed the Second Amended Complaint in case number 268648 containing the same causes of action. . . . [¶] 38. The plaintiff settled case number 268648 (*Arciniega vs. Brunick*) for $60,000. . . . [¶] 39. On or about September 15, 1993, action 268648 was dismissed."

Otherwise, in support of its motion, defendant filed a number of evidentiary items. These included copies of the pleadings above noted and assorted excerpts of plaintiff's several depositions. One such excerpt recited:

"Q YOU REACHED A SETTLEMENT WITH MR. BRUNICK; IS THAT CORRECT?

"A THAT'S CORRECT.

"Q HOW MUCH WERE YOU PAID FOR THAT?

"A 60,000.

"Q THAT CHECK HAS BEEN ACCEPTED?

"A YES.

"Q AND THAT CASE DISMISSED; IS THAT CORRECT?

"A IS 'DISMISSED' THE RIGHT TERM?

"MR. QUINT: I'LL REPRESENT IT'S DISMISSED, YES.

"THE WITNESS: OKAY."

Such filings also included copies of the complaint filed in the initial action against defendant, No. 240019, and of the complaint and later amendments thereto in the legal malpractice action, No. 268648.

Of significance to our disposition of the appeal, defendant's points and authorities recited that "[t]o comprehend the significance of the plaintiff's recovery on the malpractice action requires understanding the policies behind compensatory damages generally, and the relationship of parties in a malpractice context, specifically, The [C]ivil [C]ode establishes that the function of compensatory damages in a tort action is to restore the [plaintiff] as nearly as possible to his or her former position or its monetary equivalent. Section 3333 of the *Civil Code* states: [¶] 'For the breach of an obligation not arising from a contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not[.'] [¶] A necessary corollary to the policy underlying compensatory damages is that the plaintiff is not placed in a better position than he or she would have been i[f] . . . the wrong [had] not been committed. This was illustrated in . . . *Valdez vs. Taylor Auto Co.* (1954) 129 Cal[.]App[.]2d 810 [278 P.2d 91]. [¶] It necessarily follows, given this implicit function of compensatory damages, that a plaintiff is entitled to recover once for each wrong. As [P]rofessor Witkin stated: [¶] 'The general theory of compensatory damages bars double the coverage for the same wrong . . . [] only one complete satisfaction [is] permissible . . . [.'] [¶] B. Witkin, Summary of California Law, 9th Edition, Torts, at section 1322, page 779. [¶] 2. *In legal malpractice, the offending attorney steps into the shoes of the original tortfeasor.* [¶] Understanding the function of compensatory damages now leads us to a discussion of why a recovery in a legal malpractice claim constitutes such recovery. [¶] As in other negligence cases, an attorney is liable in a malpractice action for all damages directly and proximately caused by the attorney[']s negligence. *Smith vs. Lewis* (1975) 13 Cal[.]3d 349 [118 Cal.Rptr. 621, 530 P.2d 589]. When the attorney[']s negligence lies in his or her failure to press a meritorious claim, the measure of damages is the value of the claim lost. Or, as has been recently stated: [¶] 'When an attorney's negligence lies in his failure to press a meritorious claim, the measure of damages is the value of the claim lost. If the injury occurred because of his negligence in handling litigation, the measure of direct damage is the difference between the amount of actual judgment obtained and the judgment that should have been recovered[.'] [¶] *Granquist vs. Sandberg* (1990)

219 Cal[.]App[.]3d 181 [268 Cal.Rptr. 109]. [¶] Thus, it is the function of the malpractice cause of action to compensate the plaintiff for what he or she would have recovered but for the attorney negligence. The attorney thus steps into the shoes of the original tortfeasor. [¶] That the attorney becomes proxy for the original tortfeasor was also indicated by the prohibition on indemnification. That is, the attorney adjudged to be negligent may not then recover from the original tortfeasor. *Munoz vs. Davis* (1983) 141 Cal[.]App[.]3d 420 [190 Cal.Rptr. 400]. [¶] Applying these principles to this case shows that the plaintiff was adequately compensated in the malpractice action for the damages that allegedly arose from the BANK's handling of her account in the El Faro scheme. The fact that she allowed the dismissal to be filed signifies a learned or tacit agreement that her attorneys be relieved from further liability."

Plaintiff filed opposition to the motion for summary judgment. Such filings did not include any evidentiary items other than copies of the so-called record of returned items reflecting chargebacks to plaintiff's account by defendant of $1,940.88 and $496.90.

As for plaintiff's separate statement of undisputed material facts, she did not dispute any of defendant's facts quoted above. Moreover, no new facts were offered which would tend to disprove the theory of disposition based on a retraxit as contended and established by defendant's statement of undisputed material facts.

Defendant filed a reply to plaintiff's opposition. In such reply, defendant stated, among other things, "[w]hat is undisputed is that the plaintiff is taking two bites at the apple by virtue of this action. What she fails to explain is the representation asserted in the three versions of her complaint against her former attorneys that her cause of action against the BANK was precluded by the unauthorized dismissal of her complaint. [¶] That is, she was asserting that her former attorneys, in dismissing her action against the BANK, prevented her recovery from the BANK and she was thus, a fortiori, urging the court to compensate her for what she would have otherwise recovered from the BANK. If she had not taken that position, presumably her attorney malpractice carrier would not have entertained her lawsuit since she had the chance to maintain [her own] viable action against the BANK."

With these materials before it, the trial court entertained oral argument of the motion which, parenthetically, was heard along with motions to dismiss the complaint for want of prosecution and to amend the answer. After the matter was submitted, the court issued a minute order granting the motion

for summary judgment. The order also reflected that the motions to amend and to dismiss had been withdrawn. Otherwise, the court stated, ". . . this court believes that plaintiff['s] pursuing the legal malpractice action wherein she sought and recovered damages for the bank's conduct bars her from further proceeding against the bank. The attorneys' liability is only predicated on recovery [in] the underlying case—hence the 'case within a case' rule of legal malpractice [applies]. Plaintiff, by her settlement, has been fully compensated [on] her claim."

In due course, a formal written judgment was signed and filed reflecting that its basis was the granting of defendant's motion for summary judgment. This appeal followed.

### DISCUSSION

In pursuing her appeal, plaintiff makes the remarkable statement in her brief, with reference to the proceedings in the trial court, that "[i]n order to prevail on this motion, Bank of San Bernardino must prove that it had the undisputed legal right to" debit plaintiff's account in the amount of $7,353.37. This mistaken, if not irrelevant, notion led plaintiff to devote 17 pages of her 20-page brief to a discussion of the California Uniform Commercial Code aspects of the case, i.e., contending that defendant had no legal right to charge back the El Faro checks which plaintiff had cashed and then deposited in defendant bank.

Such contention is pointless because implicit in the trial court's granting of the motion for summary judgment was the court's recognition of defendant's liability under the California Uniform Commercial Code for the $7,353.37 in El Faro checks credited to plaintiff's account on October 10, 1986, and then debited on October 14, 1986. ▮▮▮ In other words, going beyond such recognition and in light of it, the trial court concluded that plaintiff's settlement of her legal malpractice action against her former attorneys for $60,000 fully compensated her for any claim for the aggregate amount of the El Faro checks she may have had against defendant bank under practices and procedures prescribed by the California Uniform Commercial Code.

Aside from her California Uniform Commercial Code arguments, plaintiff assigns as error that the trial court "relied upon the 'case within the case' to grant the summary judgment." Plaintiff devotes the remaining three pages of her brief to arguing, among other things, that her "claim against her former attorneys was separate and apart from her claim against the bank." Assuming that such argument has colorable validity, plaintiff wholly failed to advance

this position in the context of defending against the motion for summary judgment. More particularly, it is astonishing, *despite having filed no evidentiary materials in opposition to the motion for summary judgment*, that plaintiff yet makes the fatuous assertion in her brief that there remains "a triable question of fact of plaintiff's total damage caused by the bank." It requires no citation of authority to confirm the proposition that it is impossible to raise a triable issue of material fact in opposing a motion for summary judgment *unless evidentiary items are filed as part of such opposition*. We reiterate: plaintiff filed no meaningful evidentiary items in opposition to the motion.

These observations remind us that it is a summary judgment here under review. Such review, in the first instance, is guided by detailed statutory provisions set forth in section 437c of the Code of Civil Procedure. Of key significance are subdivisions (o)(2) and (c).

Code of Civil Procedure 437c, subdivision (o)(2) provides in pertinent part, "[a] defendant . . . has met his or her burden of showing that [plaintiff's] cause of action has no merit if that party has shown . . . that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as *to . . . a defense thereto.*"

Code of Civil Procedure 437c, subdivision (c) provides that "[t]he motion for summary judgment *shall be granted* if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is *entitled to a judgment as a matter of law.* In determining whether the papers show that there is no triable issue as to any material fact the court shall consider *all of the evidence set forth in the papers,* except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (Italics added.)

The standard of review to be applied in assessing the propriety of a summary judgment had been variously recited in literally hundreds of cases before the 1992 and 1993 amendments to Code of Civil Procedure section 437c. In our view, these amendments did not change certain aspects of the standard of review noted.

First, it is yet true that such review is the same as that prescribed for the trial court; in other words, "[a]n appellate court determines de novo whether . . . the moving party was entitled to summary judgment as a

matter of law." (*Jambazian* v. *Borden* (1994) 25 Cal.App.4th 836, 844 [30 Cal.Rptr.2d 768].)

Otherwise, it yet remains the law that the first step in the actual review begins with an analysis of the pleadings, i.e., the complaint and the answer, including any affirmative defenses it may contain. This follows because "[t]he pleadings define the issues to be considered on a motion for summary judgment." (*Ferrari* v. *Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 252 [38 Cal.Rptr.2d 65].)

The next step in the analysis calls for an evaluation of the moving defendant's effort to meet its burden of showing that plaintiff's cause of action has no merit or that there is a complete defense to it. Once the defendant has met that burden, it shifts to the plaintiff to show that a triable issue of material fact exists as to its cause of action or defense to it. (Code Civ. Proc., § 437c, subd. (o)(2).) This phase of the scenario likewise has not changed, in practical effect, as a result of the 1992 and 1993 amendments to section 437c. (*Villa* v. *McFerren* (1995) 35 Cal.App.4th 733, 743 [41 Cal.Rptr.2d 719].)

In support of the foregoing position, *Villa* relies on a part of the legislative history of the 1992 reenactments. " 'The most significant of the proposed changes is set forth in the new subdivision (n) [now subdivision (o)] to CCP Section 437c. . . . A defendant would be deemed to have met his burden of showing that a cause of action has no merit if the party shows that one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. Once the defendant meets that burden, the burden shifts to the plaintiff to show that a triable issue of fact remains in the cause of action.' (See Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2616 (1991-1992 Reg. Sess.) p. 8.)" (*Villa* v. *McFerren*, *supra*, 35 Cal.App.4th 733, 744-745.)

The final step in the analysis, if the burden has shifted, is of course to determine if the filings in opposition operate to raise a triable issue of material fact. If they do, the motion must be denied; if they do not (as here), the *motion must be granted.* (Code Civ. Proc., § 437c, subd. (c); *River Bank America* v. *Diller* (1995) 38 Cal.App.4th 1400, 1410-1411 [45 Cal.Rptr.2d 790].)

In compliance with the foregoing, we turn to the first step in the prescribed sequence of analysis, i.e., to define the issues framed by the pleadings. The gravamen of plaintiff's first amended complaint, as set forth in the earlier synopsis, was that defendant had refused plaintiff's

demand for payment of $7,353.37, representing the aggregate of the El Faro checks plaintiff had cashed and deposited with defendant bank. Plaintiff, allegedly, was further aggrieved allegedly because the foregoing refusal had caused her to suffer $253,063.68 in economic damages, together with "stress, humiliation, embarrassment [and] anxiety," and to experience "physical illness, sleeplessness [and] physical bodily pain and suffering, all to her general damages in excess of the jurisdictional limits of this [trial] court, according to proof at trial."

These allegations were denied by the answer, thus creating several factual issues with reference to the extent of plaintiff's alleged damages and how they were incurred. As a general proposition, it is a practical impossibility to resolve such issues by resort to a motion for summary judgment. However, in this instance, defendant's answer posed at least one significant affirmative defense. Under California practice, all new material alleged in the answer is deemed denied. (Code Civ. Proc., § 431.20, subd. (b).) Thus, the issues of fact, prospectively to be challenged by opposition to the motion, were imported by allegations in this affirmative defense.

Defendant's factual showing in the form of evidentiary filings to establish its affirmative defense included copies of the complaints in No. 240019 and No. 268648. It also included the dismissals filed in both matters, along with plaintiff's deposition testimony confirming that she had settled No. 268648 for $60,000 and then arranged to have the court dismiss it. The substantive question imported by these filings was whether they succeeded in meeting the burden of showing that defendant had a complete defense to plaintiff's cause of action, thus shifting the burden to plaintiff to show that a triable issue of fact existed as to the affirmative defenses.

As we understand defendant's position, as contemplated by the "Twentieth Affirmative Defense," it amounts to this. The objective of the legal malpractice action, filed by plaintiff against her former attorneys, was to demonstrate that she could have succeeded in No. 240019, had it been tried, and that hence she was entitled to recover from her former attorneys what she could have otherwise recovered directly from defendant bank. In defendant's view, settlement of the legal malpractice action for $60,000 operated to validate plaintiff's claim against defendant bank and to compensate her for such claim. Thus, defendant argues, there is a complete defense to the current action because plaintiff has already been compensated for her claim and is therefore barred from pursuing further such claim which she is now asserting for the second time (actually the third time).

Analysis of the legal validity of the foregoing position requires an exercise in melding two legal propositions, i.e., (1) the retraxit resulting from the

court's dismissal of the legal malpractice action and (2) the case-within-a-case doctrine which characterizes legal malpractice cases. However, before undertaking such analysis, it would be useful to reiterate that this record features *three separate and distinct lawsuits*. The first, No. 240019, was filed by plaintiff against defendant to recover the aggregate amount of the El Faro checks. For reasons not fully revealed by the record, that action was dismissed and we assume, because plaintiff later alleged it to be so, that certain legal infirmities prevented a further prosecution of No. 240019 after its dismissal. The second action, No. 268648, is the legal malpractice action filed by plaintiff against her former attorneys who had filed and allegedly mismanaged No. 240019. At least one objective of the legal malpractice action was to seek recovery from her former attorneys of the damages which plaintiff had expected to recover in No. 240019 and which she could have recovered therein but for the alleged legal malpractice of those former attorneys. No. 268648 was settled by plaintiff for $60,000 and then dismissed by order of the court. The third action, No. 263149, is the underlying action. Although filed before the legal malpractice action, the underlying action lay dormant until a first amended complaint was filed therein following settlement of No. 268648. Just as it was in No. 240019, plaintiff's grievance in No. 263149, the underlying action filed by plaintiff against defendant bank, was defendant's refusal to credit plaintiff's account with the aggregate amount of the El Faro checks or to pay plaintiff such sum.

To place these three cases in their proper prospective, No. 240019 and No. 268648 are related for purposes of defining or delineating the nature and extent of plaintiff's legal malpractice claim. In turn, No. 268648 and the underlying action, No. 263149, are related for purposes of determining whether the defense of a retraxit chargeable against plaintiff is available to defendant in its defense of the underlying action, No. 263149.

Turning then to a detailed analysis, we start with the first of the propositions above noted. In defendant's "Twentieth Affirmative Defense," it was alleged that, "[i]f it should be determined that defendant is liable . . . for . . . [any] . . . damages allegedly sustained by plaintiff . . . plaintiff's recovery from defendant should be . . . barred by reason of her settlement in case number 268648. . . ." Factually, it is undisputed that plaintiff settled No. 268648 for $60,000 following which it was dismissed by order of the court. We have concluded, as already noted, that in legal effect the dismissal was with prejudice. (See fn. 1, *ante.*)

This scenario is similar to what happened in *Roybal* v. *University Ford* (1989) 207 Cal.App.3d 1080 [255 Cal.Rptr. 469]. In *Roybal*, the plaintiff

filed a municipal court action against a car dealership for damages allegedly suffered as a result of a defective auto rear axle. The plaintiff later filed virtually an identical action against the dealership in superior court and thereupon requested that the municipal court action be dismissed with prejudice. After such dismissal had been ordered, the defendant dealership moved for summary judgment in the superior court action. In considering the motion, the trial court concluded that the action before it was barred by dismissal of the earlier action; based thereon, it granted the motion. (*Id.* at pp. 1083-1084.) On appeal, the judgment was affirmed. (*Id.* at p. 1089.)

██ In rationalizing its affirmance, *Roybal* observed, " '[a] dismissal with prejudice by plaintiff of its action is a bar to a subsequent action on the same cause; otherwise there would be no meaning to the "with prejudice" feature. ". . . It is a final judgment in favor of defendants . . . ." [Citation.].' " (*Roybal* v. *University Ford, supra,* 207 Cal.App.3d at pp. 1085-1086.) Continuing, " '[a] request for dismissal *with prejudice* operates as a *retraxit* and bars a new action. . . .' [Citation.]" (*Id.* at p. 1086, italics in original.) Continuing further, " 'A *retraxit* differs from a nonsuit, in that the one is negative, and the other positive: the nonsuit is a default and neglect of the plaintiff, and therefore he is allowed to begin his suit again, upon payment of costs; but a *retraxit* is an open and voluntary renunciation of his suit, in court, and by this he for[]ever loses his action.' (3 Blackstone, Commentaries 296.) 'A retraxit has always been deemed a judgment on the merits against the plaintiff, estopping him from subsequently maintaining an action for the cause renounced.' (2 Freeman, A Treatise of the Law of Judgments (1925) § 757, p. 1595.)" (*Ibid.*)

In view of the foregoing, plaintiff is clearly barred from proceeding against defendant, by reason of the retraxit, if the cause she "renounced" in No. 268648 is the same cause she is currently pursuing against defendant. Thus, the question: Is it the same cause or grievance?

For her part, plaintiff insists in her brief that the claim she settled "against her former attorney's [*sic*] was separate and apart from her claim against the bank." Such insistence leads to the picturesque notion that plaintiff was somehow empowered to engage in a selective settlement, i.e., that what she settled were "other" claims against her former attorneys but not her claim against them arising from their failure successfully to prosecute No. 240019. In this regard, there is no question but that plaintiff alleged such a grievance in No. 268648. In the second amended complaint filed in that action, after referring to the filing of No. 240019, it is alleged that had her former attorneys ". . . exercised proper care and skill in the foregoing matter, all of

plaintiff's claims and remedies against the Bank of San Bernardino would have been preserved and plaintiff would have recovered from said bank all damages caused by said bank's wrongful conduct."

The dismissal of No. 268648 did not refer selectively to any particular claims or causes of action; the entire action was dismissed without qualification.

Continuing with our analysis of whether the cause dismissed with prejudice in No. 268648 is the same as one plaintiff is currently pursuing leads to an inquiry into just what is a cause of action. In our decision, *Barrett* v. *Superior Court* (1990) 222 Cal.App.3d 1176 [272 Cal.Rptr. 304], we inquired into the true nature of *a cause of action*. After noting that the plaintiffs in *Barrett* had brought suit, consisting of four so-called causes of action for negligence, strict liability, breach of implied warranty and wrongful death, we stated that, "[m]ore properly characterized, however, the plaintiffs' suit consisted of but one true 'cause of action,' that cause of action being for the injury [plaintiffs] had suffered as a result of the wrongful death of [their] decedent [citing Witkin], and the four 'causes of action' were actually counts based on the same primary right of plaintiffs and the same primary duty of defendants. . . ." (*Id.* at pp. 1181-1182.)

Applying the foregoing prescription to the facts here, plaintiff's "cause of action" against defendant consisted of or was embodied in defendant's refusal, after crediting the El Faro checks to plaintiff's account on October 10, 1986, to pay plaintiff $7,353.37 or to reverse the debits posted October 14, 1986. The several consequences alleged to have resulted from the primary violation of plaintiff's rights did not represent new causes of action. Actually, these consequences amounted only to varying theories of damages which allegedly arose from or were proximately caused by the single violation of duty noted.

From the foregoing, we can fairly observe that the cause of action pleaded by plaintiff against her former attorneys in No. 268648 was precisely the same as that pleaded currently by plaintiff against defendant in No. 263149, the underlying action. In fact, included among the allegations in the first amended complaint filed in the underlying (current) action are those allegations reflecting the recital of plaintiff's cause of action against defendant as alleged in No. 268648. (Compare paragraphs 5 and 10 in the first amended complaint filed in No. 263149 with paragraph 5 in the second amended complaint filed in No. 268648, *ante.*)

To bring closure to this analysis requires a determination of whether it is of any legal consequence or infirmity that defendant was not a party to No.

268648. This suggests the occasion for exploring the case-within-a-case doctrine.

In this regard, it is remarkable indeed, as *observed by plaintiff* in her brief, if No. 268648 had not been settled, that she would have been required to try against the malpractice defendants the same action which they had neglected to pursue against plaintiff's initial adversary in No. 240019 (defendant here). This position is confirmed by the authorities. It is a given in legal malpractice cases that the allegedly negligent attorney becomes the proxy for or steps into the shoes of the original offending defendant.

*Kessler* v. *Gray* (1978) 77 Cal.App.3d 284 [143 Cal.Rptr. 496], is instructive. *Kessler* was a legal malpractice action arising because Kessler's counsel, Gray, failed timely to bring Kessler's cross-complaint against Koomer to trial, resulting in dismissal of Kessler's cross-complaint for want of prosecution. (*Id.* at p. 288.) Trial of the legal malpractice action, in substance, was a trial of Kessler's cross-complaint against Koomer. The jury awarded $25,500 in damages to Kessler against his errant attorney, Gray based upon its (the jury's) finding that Kessler would have been entitled to recover that amount from Koomer. (*Id.* at pp. 292-293.) We note in passing that it was implicitly accepted by both sides in *Kessler* that the measure of damages, if Kessler were to prevail, was what he could have recovered against Koomer had the cross-complaint not been dismissed and gone to trial. Thus, the entire decision in *Kessler* represents an occasion, accepted by both sides, for application of the case-within-a-case doctrine.

To the same general effect is *Granquist* v. *Sandberg* (1990) 219 Cal.App.3d 181 [268 Cal.Rptr. 109]. In *Granquist*, the court observed that in legal malpractice cases, ". . . the general rule of damages [is] that when an attorney's negligence 'lies in his failure to press a meritorious claim, the measure of damages is the value of the claim lost.' [Citation.]" (*Id.* at p. 187.)

There is nothing complicated or esoteric about this notion. ■ Inherent in our legal system, when a person (the client) retains another (the attorney) to represent him or her in court, is the possibility that the representative will occasionally fail to exercise the requisite care necessary to achieve the goal of the representation. It is axiomatic that the damages for such failure are those which would have been recovered but for the failure to exercise care. Both *Kessler* and *Granquist* confirm such proposition, as do others. (See *Smith* v. *Lewis* (1975) 13 Cal.3d 349 [118 Cal.Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231].) In *Smith*, the Supreme Court, in affirming a judgment

against the defendant lawyer in a legal malpractice action, stated, "[t]he general rule is that a plaintiff is entitled only to be made whole: i.e., when the attorney's negligence lies in his failure to press a meritorious claim, the measure of damages is the value of the claim lost." (*Id.* at p. 361.)

Such a rule can only withstand the test of logic if the misperforming lawyer is deemed to constitute the same "target," legally speaking, as the original offending defendant. Because of the legal malpractice, the original target is out of range; thus, the misperforming attorney must stand in and submit to being the target instead of the former target which the attorney negligently permitted to escape. This is the essence of the case-within-a-case doctrine.

Here, invoking such doctrine is a predicate to determining whether a retraxit occurred. Because of the "proxy" status of the legal malpractice defendants, there is no logical reason why the judgment in their favor, represented by the dismissal in No. 268648 (See *Roybal* v. *University Ford*, *supra*, 207 Cal.App.3d 1080, 1086), should not extend and redound to the benefit of defendant in No. 263149.

Examined from another perspective, because plaintiff alleged the identical grievance in No. 240019 and No. 268648, plaintiff's dismissal with prejudice of No. 268648 was the legal equivalent of a dismissal with prejudice of No. 240019. Defendant here (No. 263149) was the defendant there (No. 240019); as a result, the retraxit in No. 268648 can be deemed to have been incurred in No. 240019 and thus to constitute a bar to plaintiff's proceeding in No. 263149.

Referring again to the analytical framework earlier described for use in reviewing a summary judgment, defendant succeeded in demonstrating that it had a valid defense to plaintiff's first amended complaint. Thus, the burden shifted to plaintiff, under subdivision (o)(2) of section 437c of the Code of Civil Procedure, to show, if she could, that a triable issue of one or more material facts remained to be resolved as to such defense. Because plaintiff failed to submit any evidentiary materials, she failed to carry the burden noted.

Based on the foregoing analysis, we hold that the trial court properly granted the motion for summary judgment. (Code Civ. Proc., § 437c, subd. (c).).

## DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and Richli, J., concurred.