[No. E018614. Fourth Dist., Div. Two. Aug. 11, 1998.]

TUDOR RANCHES, INC., Plaintiff and Appellant, v.
STATE COMPENSATION INSURANCE FUND, Defendant and
Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.B.2. through II.B.12.

## COUNSEL

Roxborough, Pomerance & Gallegos, Nicholas P. Roxborough, Drew E. Pomerance, Esteban G. Gallegos, Shernoff, Bidart, Darras & Arkin and Michael J. Bidart for Plaintiff and Appellant.

Jody A. Carr, Horvitz & Levy, Christina J. Imre, Stephanie Rae Williams, Sheppard, Mullin, Richter & Hampton, Finley L. Taylor and Justine M. Casey for Defendant and Respondent.

## OPINION

**RICHLI, J.**—Tudor Ranches, Inc. (Tudor) stipulated to judgment in favor of State Compensation Insurance Fund (SCIF) in order to seek immediate appellate review of numerous *in limine* rulings. While we conclude the judgment is appealable, on the record before us we cannot conclude the court abused its discretion in making the rulings. Accordingly, we affirm.

### I

### FACTUAL AND PROCEDURAL BACKGROUND

#### A. *Nature of the Present Dispute*

██ SCIF is a public enterprise fund created for the purpose of transacting workers' compensation insurance. (Ins. Code, §§ 11770, 11773.) It was established to ensure that affordable workers' compensation insurance would be available to employers when coverage became mandatory. (*Courtesy Ambulance Service* v. *Superior Court* (1992) 8 Cal.App.4th 1504, 1511 [11 Cal.Rptr.2d 161].)

SCIF "may transact workers' compensation insurance required or authorized by law of this state to the same extent as any other insurer." (Ins. Code, § 11778.) It is directed by statute to be "fairly competitive with other insurers," and ultimately to become "neither more nor less than self-supporting." (Ins. Code, § 11775.) If SCIF accumulates an excess of assets over

liabilities, necessary reserves, and a reasonable surplus for a given year, it may declare a dividend or credit to each employer whom it insures. (Ins. Code, § 11776.)

Tudor is a California corporation which grows and ships grapes and citrus fruit. From 1970 through 1991, Tudor purchased workers' compensation insurance from SCIF. In 1991, Tudor brought this action against SCIF for breach of implied covenant of good faith and fair dealing, interference with contractual relations, fraud, negligent misrepresentation, negligence, accounting, declaratory relief, and breach of contract.[1] ██ ██ In essence, Tudor contends SCIF established excessive reserves on, and otherwise mismanaged, Tudor's claims files, so that SCIF would receive higher premiums from and pay lower dividends to Tudor.[2]

### B. *Lower Court Rulings Sought to Be Reviewed*

Prior to trial, Tudor filed nine motions *in limine*, and SCIF filed fourteen. Most of the parties' motions sought to exclude various items of evidence. The lower court granted some of Tudor's motions and denied others. It granted, in whole or in part, all of SCIF's motions, though, as noted, *post*, it stated all of its rulings were subject to reconsideration. Tudor challenges the following rulings on SCIF's motions:

1. Restricting the parties to the language of the relevant Insurance Code sections in describing SCIF (Motion No. 1);

2. Excluding testimony of Tudor's claims expert that SCIF's method of setting reserves was not standard in the industry, unless the expert produced the manuals of other companies he used for comparison (Motion No. 2);

3. Excluding or deferring evidence of SCIF's reserving practices with respect to insureds other than Tudor (Motion No. 5);

4. Excluding reference to the Unfair Insurance Practices Act (Ins. Code, §§ 790-790.10) (Motion No. 6);

5. Excluding or deferring evidence of attorney fees and consultants' costs incurred by Tudor (Motion No. 7);

---

[1]Apparently, Tudor amended its complaint in late 1994 or early 1995 to add a claim for spoliation of evidence, but the record does not contain a copy of the amended complaint.

[2]Reserves are estimates of the amounts required to pay claims for which the insurer may be liable. (*Lipton* v. *Superior Court* (1996) 48 Cal.App.4th 1599, 1613 [56 Cal.Rptr.2d 341].) In the workers' compensation context, reserve levels directly affect the insured's premiums and dividends. (*Id.*, at p. 1614, fn. 16.)

6. Excluding evidence of SCIF's practices in administering workers' compensation insurance for public employers, absent a showing that SCIF followed the same practices with respect to Tudor (Motion No. 8);

7. Excluding evidence of alleged misreporting by SCIF of medical/legal costs (Motion No. 10);

8. Excluding reference to a trade journal article concerning SCIF's reserving practices, unless a hearsay exception was established (Motion No. 11);

9. Excluding reference to an SCIF internal memorandum concerning sales techniques, absent a sufficient foundation (Motion No. 12);

10. Excluding evidence of nonfinal judgments against SCIF in other cases involving similar claims by insureds (Motion No. 13); and

11. Excluding reference to an internal SCIF memorandum concerning requests by insureds to examine claim files, absent a sufficient foundation (Motion No. 14).

### C. *The Parties' Stipulation for Judgment*

After the court made its rulings, counsel for Tudor proposed to enter into a stipulation for judgment in favor of SCIF so that Tudor could file an immediate appeal. Counsel asserted that, due to the court's rulings, "we can't put into evidence and present the kind of trial that we feel we need to and that we believe the law allows us to." It appears one or both parties then prepared a stipulation for entry of judgment in favor of SCIF and against Tudor on Tudor's claims for breach of implied covenant of good faith and fair dealing, fraud, negligence, and breach of contract. The stipulation stated Tudor's remaining claims had been dismissed voluntarily, without prejudice, and the parties had stipulated to toll the statute of limitations on those claims pending an appeal of the judgment.

Before the court signed the judgment, however, the stipulation and judgment were modified by interlineation. As modified, the stipulation stated the parties had stipulated on the record to entry of a judgment in the form attached. The attached form of judgment awarded judgment in favor of SCIF and against Tudor on Tudor's claims for breach of implied covenant of good faith and fair dealing, negligence, breach of contract, and spoliation of evidence. It further recited that Tudor's remaining claims "have been dismissed," and deleted the provision that the dismissal was without prejudice.

The court signed the modified document, entitled "Final Judgment," and Tudor appealed.

## II

### DISCUSSION

A. *Appealability*

■ As a preliminary matter, SCIF argues the appeal should be dismissed because the judgment from which Tudor appeals is not appealable. Ordinarily, a judgment entered pursuant to a stipulation is not appealable. (*Adoption of Matthew B.* (1991) 232 Cal.App.3d 1239, 1267 [284 Cal.Rptr. 18].) In *Building Industry Assn.* v. *City of Camarillo* (1986) 41 Cal.3d 810 [226 Cal.Rptr. 81, 718 P.2d 68] (cited hereafter as *Building Industry*), however, the Supreme Court stated, ". . . there is an exception to the rule that a party may not appeal a consent judgment. If consent was merely given to facilitate an appeal following adverse determination of a critical issue, the party will not lose his right to be heard on appeal." (*Id.*, at p. 817.)

The court reiterated the exception in a subsequent opinion (*Connolly* v. *County of Orange* (1992) 1 Cal.4th 1105, 1111 [4 Cal.Rptr.2d 857, 824 P.2d 663]), and numerous Court of Appeal decisions have cited and relied on it. (See, e.g., *County of San Bernardino* v. *Pacific Indemnity Co.* (1997) 56 Cal.App.4th 666, 678, fn. 7 [65 Cal.Rptr.2d 657]; *Edwards* v. *Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 26, fn. 6 [61 Cal.Rptr.2d 518]; *Holmes* v. *Roth* (1992) 11 Cal.App.4th 931, 934, fn. 1 [14 Cal.Rptr.2d 315]; *Boothby* v. *Atlas Mechanical, Inc.* (1992) 6 Cal.App.4th 1595, 1598 [8 Cal.Rptr.2d 600].) The justification offered for the exception is that it would be " 'wasteful of trial court time' to require the plaintiff to undergo a probably unsuccessful court trial merely to obtain an appealable judgment." (*Building Industry, supra,* 41 Cal.3d at p. 817.)

Tudor argues the *Building Industry* exception authorizes its appeal in this case. In response, SCIF first suggests the exception is no longer viable after *Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725 [29 Cal.Rptr.2d 804, 872 P.2d 143]. Second, SCIF argues the exception does not apply here because the rulings Tudor seeks to have reviewed were not adverse final determinations. We consider each argument in turn.

1. *Viability of Building Industry Exception*

In *Morehart* v. *County of Santa Barbara, supra,* 7 Cal.4th 725, (*Morehart*) the Supreme Court, disapproving a line of Court of Appeal authority, held

that, under the "one final judgment" rule, ". . . an appeal cannot be taken from a judgment that fails to complete the disposition of all the causes of action between the parties even if the causes of action disposed of by the judgment have been ordered to be tried separately, or may be characterized as 'separate and independent' from those remaining." (*Id.*, at p. 743.) As SCIF notes, the Court of Appeal in *Four Point Entertainment, Inc.* v. *New World Entertainment, Ltd.* (1997) 60 Cal.App.4th 79 [70 Cal.Rptr.2d 82] (*Four Point*), read *Morehart* as "implicitly overruling" *Building Industry's* conclusion that an appeal from a consent judgment following adverse determination of a critical issue is proper. (*Four Point, supra*, at p. 83, fn. 5.)

The statement of the court in *Four Point*, however, should be considered in light of the context in which the appealability issue was raised in that case. In *Four Point*, the trial court summarily adjudicated some, but not all, of the plaintiff's claims in favor of the defendant. The parties then stipulated to the entry of a "final judgment" which recited their intent that the remaining claims be dismissed *without prejudice* to their later prosecution. The court concluded the judgment was nonappealable because it did not dispose of all claims between the parties as required by *Morehart*. (*Four Point, supra*, 60 Cal.App.4th at p. 83; see also *Don Jose's Restaurant, Inc.* v. *Truck Ins. Exchange* (1997) 53 Cal.App.4th 115 [61 Cal.Rptr.2d 370]; *Jackson* v. *Wells Fargo Bank* (1997) 54 Cal.App.4th 240 [62 Cal.Rptr.2d 679]; *Hill* v. *City of Clovis* (1998) 63 Cal.App.4th 434 [73 Cal.Rptr.2d 638].)

We agree with the *Four Point* court that, notwithstanding *Building Industry*, *Morehart* precludes a party from obtaining immediate review of an adverse ruling on some of its claims by dismissing the remaining claims *without prejudice*. However, it is not apparent to us that *Morehart* precludes a party from stipulating to an adverse judgment *with prejudice* on *all* of its claims, in order to appeal from that judgment. In such a case, there would be no claims left unresolved and, hence, no violation of *Morehart*. Indeed, one of the decisions on which the *Four Point* court relied stated, albeit in dictum, that a stipulation for a judgment dismissing all remaining causes of action with prejudice "would have solved the appealability problem." (*Don Jose's Restaurant, Inc.* v. *Truck Ins. Exchange, supra*, 53 Cal.App.4th at p. 118, fn. 3.) We also note that at least two decisions after *Morehart* have applied the *Building Industry* exception to allow appeals from stipulated judgments which (apparently) did dispose of all of the claims between the parties. (*Edwards* v. *Centex Real Estate Corp., supra*, 53 Cal.App.4th 15, 26, fn. 6; *Huntley* v. *Foster* (1995) 35 Cal.App.4th 753, 755 [41 Cal.Rptr.2d 358].)

In the absence of further guidance from the Supreme Court, we construe *Morehart* as abrogating the *Building Industry* exception only to the extent

that exception might be applied to permit an appeal from a stipulated judgment which does not dispose of all claims between the parties. We therefore must determine whether the judgment in this case did dispose of all of Tudor's claims.

The judgment as signed by the court stated the unadjudicated claims had been dismissed but did not specify whether the dismissal was with or without prejudice. We recently concluded that a dismissal which failed to specify whether it was with or without prejudice should be deemed to be with prejudice absent a contrary contention by the plaintiff. (*Arciniega* v. *Bank of San Bernardino* (1997) 52 Cal.App.4th 213, 216, fn. 1 [60 Cal.Rptr.2d 495].) Tudor makes no contention here that the dismissal was without prejudice. Rather, Tudor states in arguing the judgment is appealable: "The remaining five causes of action were completely dismissed. There is no provision that the dismissal was 'without prejudice.' "

Moreover, even a judgment that ordinarily would not be appealable will support an appeal where the appellant waives its right to litigate any unresolved cause of action. (*Sullivan* v. *Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 309 [63 Cal.Rptr.2d 74, 935 P.2d 781].) By taking the position that the stipulated judgment was a final, appealable disposition of all of its claims, Tudor unequivocally confirmed its consent to the dismissal of the unadjudicated claims with prejudice. Thus, the judgment, both on its face and in practical effect, constituted a final disposition of all claims.

### 2. *Applicability of Building Industry to In Limine Rulings*

SCIF points out that the *Building Industry* exception, as stated by the Supreme Court, contemplates an appeal from a consent judgment "following adverse determination of a critical issue." SCIF asserts the judgment in this case was not an *adverse* determination because the court specified that "[a]ll of these [rulings] . . . are without prejudice and subject to renewal."

*In limine* rulings are by their nature tentative. (*Johnson* v. *Tosco Corp.* (1991) 1 Cal.App.4th 123, 141 [1 Cal.Rptr.2d 747].) However, no decision of which we are aware has held that a stipulated final judgment was not appealable because it followed an *in limine* ruling. To the contrary, at least four decisions have permitted appeals under *Building Industry* from stipulated judgments following *in limine* rulings. (*Edwards* v. *Centex Real Estate Corp., supra,* 53 Cal.App.4th at p. 26, fn. 6 [*in limine* ruling excluding all evidence of oral and written communications leading to execution of settlement and releases appellants sought to challenge]; *Huntley* v. *Foster, supra,* 35 Cal.App.4th at p. 755 [*in limine* ruling precluding treating physicians

from testifying as experts]; *Esbensen* v. *Userware Internat., Inc.* (1992) 11 Cal.App.4th 631, 635 [14 Cal.Rptr.2d 93] [*in limine* ruling excluding evidence of implied "good cause" requirement for termination of employment]; *Dong* v. *Board of Trustees* (1987) 191 ·Cal.App.3d 1572, 1576-1577 [236 Cal.Rptr. 912] [*in limine* ruling excluding documentary evidence].) None of these decisions states or implies a requirement that an *in limine* ruling not be subject to further consideration before the parties may stipulate to an appealable final judgment.

We recognize that, without some limitation on the *Building Industry* exception, a party theoretically could obtain immediate appellate review of any *in limine* ruling, no matter how inconsequential, provided both parties were willing to stipulate to a judgment finally disposing of all claims. It might be argued that an appeal under *Building Industry* should be allowed only where the ruling at issue truly makes it impossible as a practical matter for the plaintiff to proceed with the case. However, we are unaware of any authority imposing such a requirement, and to do so would require the reviewing court to make an assessment of the feasibility of the plaintiff's case without the benefit of a trial record. Without guidance from precedent, we conclude that, if the *Building Industry* exception is to be thus limited, the limitation should come from the Supreme Court. Since the judgment in this case met the criteria for finality as stated by the court in *Morehart*, we will consider the appeal on its merits.

### B. *Merits*

#### 1. *Standard of Review*

The parties disagree sharply as to the appropriate standard of review. Because of the importance of that issue to our determination of Tudor's claims of error, we discuss it in some detail.

The trial court is "vested with broad discretion in ruling on the admissibility of evidence." (*Smith* v. *Brown-Forman Distillers Corp.* (1987) 196 Cal.App.3d 503, 519 [241 Cal.Rptr. 916].) "[T]he court's ruling will be upset only if there is a clear showing of an abuse of discretion." (*Id.,* at p. 520.) " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citation.]" (*Walker* v. *Superior Court* (1991) 53 Cal.3d 257, 272 [279 Cal.Rptr. 576, 807 P.2d 418].) Moreover, even where evidence is improperly excluded, the error is not reversible unless " 'it is reasonably probable a result more favorable to the appellant

would have been reached absent the error. [Citations.]' [Citation.]" (*Vorse* v. *Sarasy* (1997) 53 Cal.App.4th 998, 1013 [62 Cal.Rptr.2d 164]; accord, *Castaneda* v. *Bornstein* (1995) 36 Cal.App.4th 1818, 1830 [43 Cal.Rptr.2d 10].)

Tudor acknowledges these general principles but argues different standards should apply here. Tudor first cites *City of Sacramento* v. *Drew* (1989) 207 Cal.App.3d 1287 [255 Cal.Rptr. 704] for the proposition that, where the trial court "is mistaken about the scope of its discretion," the error is one of law. (*Id.*, at pp. 1297-1298.) Tudor notes that, at one point during the hearing on the *in limine* motions, the lower court stated: "What you're required to show and what's permissible by the evidence and relevant in this trial may be two different things. And just because you're required to show it doesn't mean I'm going to allow you to put it on." According to Tudor, the court's suggestion that it could exclude "evidence that a party is required by law to establish" shows it used an erroneous legal standard which is subject to de novo review.

We read the court's comment differently than Tudor does. In our view, the court merely observed that, even though the law might require Tudor to prove a given matter, Tudor still had to do so with admissible evidence. In other words, Tudor could not establish admissibility merely by showing the evidence might be helpful in proving its case. Nothing in this unremarkable observation, nor anything else in the record, indicates the court misunderstood the extent of its discretion. We therefore reject Tudor's argument for de novo review.

Tudor also contends the lower court's rulings, if erroneous, are reversible per se. Tudor cites *Kelly* v. *New West Federal Savings* (1996) 49 Cal.App.4th 659 [56 Cal.Rptr.2d 803] (*Kelly*), in which the court held that, where the effect of the trial court's abuse of its discretion in granting *in limine* motions "was to prevent plaintiffs from offering evidence to establish their case," the error was reversible per se. (*Id.*, at p. 677.) In *Kelly*, however, the trial court completely foreclosed the plaintiffs from pursuing the only factual theory of liability supported by the evidence. (*Id.*, at pp. 667-668, 675.)

In contrast, none of the challenged rulings in this case foreclosed Tudor's essential theory of liability. The great majority of the rulings simply precluded certain arguments or discrete items of evidence (e.g., Motions No. 1, 6, 7, 8, 10, 11, 12, 13 and 14). The remaining rulings merely precluded Tudor's claims expert from testifying to industry standards *unless* the materials on which he had relied were produced (Motion No. 2), and excluded evidence of SCIF's reserving standards with respect to other insureds

(Motion No. 5). Tudor's essential theory of liability was that SCIF had mishandled claims *against Tudor*. The court did nothing to interfere with Tudor's ability to pursue that theory.

Moreover, *Kelly*'s application of a standard of reversibility per se was based on its observation that, in many cases, a court cannot intelligently rule on admissibility at the *in limine* stage because the record is not sufficiently developed to determine relevance, probative value, and potential for prejudice. (49 Cal.App.4th at p. 671.) In such cases, it cannot reasonably be determined on appeal what the outcome would have been absent the erroneous ruling, and reversal should be automatic.

In *Kelly*, however, the court, not the plaintiffs, was responsible for the undeveloped evidentiary record, because, after the court excluded the bulk of the plaintiffs' evidence, it granted a nonsuit based on the remaining evidence. (49 Cal.App.4th at p. 669.) Here, the lower court not only did not grant a nonsuit, it expressly invited Tudor to present its evidence to the jury and to request reconsideration at that time of any *in limine* rulings with which it was dissatisfied. Instead, Tudor made a tactical decision to force immediate review by *stipulating* to an adverse judgment.[3]

■ By appealing, Tudor assumed "the burden of showing reversible error by an adequate record." (*Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 574 [224 Cal.Rptr. 664, 715 P.2d 624].) One aspect of that burden requires that the appellant develop the fullest possible evidentiary record *before* seeking review. Thus, an appellant must make an offer of proof in the trial court in order to claim on appeal that evidence was wrongly excluded. (*Castaneda* v. *Bornstein, supra,* 36 Cal.App.4th 1818, 1827.) Similarly, if an appellant wishes to argue a point on appeal, it must first make a record by raising the point in the trial court. (*North Coast Business Park* v. *Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 28-29 [21 Cal.Rptr.2d 104]; *In re Marriage of Moschetta* (1994) 25 Cal.App.4th 1218, 1227 [30 Cal.Rptr.2d 893].)

■ If Tudor believed, as it now argues, that the record when the court ruled was not sufficiently developed to permit meaningful consideration of

---

[3]At oral argument, Tudor asserted that, even if the court was willing to reconsider its rulings during the evidence phase, it effectively prevented Tudor from presenting its case by precluding reference to the disputed evidence in its opening statement. We do not deny the importance of a party's opening statement in its trial presentation. But it is neither uncommon nor unreasonable for a court to exclude evidence from an opening statement where its ultimate admissibility is uncertain. As we have said, the excluded evidence was not so vital to Tudor's case as to preclude it from proceeding on its essential theory of liability, and there is no reason to believe the court would have granted a nonsuit had Tudor presented its opening statement without the evidence. Had the court done so, of course, Tudor could have appealed *that* ruling and would have been entitled to de novo review and the benefit of every legitimate factual inference. (See *Adkins* v. *State of California* (1996) 50 Cal.App.4th 1802, 1809 [59 Cal.Rptr.2d 59].) But we will not apply that standard of review to discretionary *in limine* rulings which, at most, may have unduly restricted Tudor's opening statement.

the issues, it had at least two alternatives. First, it could have requested a hearing, pursuant to Evidence Code section 402, at which it could have presented foundational evidence to establish the admissibility of the evidence SCIF sought to exclude. Second, it could have proceeded to trial, presented the appropriate foundational evidence there, and asked the court to reconsider its exclusionary rulings in light of the more complete record. It did neither.

■ An analogous situation exists where a demurrer is sustained with leave to amend and the plaintiff elects to appeal immediately rather than amend. In that case, the reviewing court will "presume the plaintiff has stated as strong a case as he can" and "resolve all ambiguities and uncertainties raised by the demurrer against the plaintiff." (*Setliff* v. *E. I. Du Pont de Nemours & Co.* (1995) 32 Cal.App.4th 1525, 1533 [38 Cal.Rptr.2d 763]; accord, *Casella* v. *City of Morgan Hill* (1991) 230 Cal.App.3d 43, 48 [280 Cal.Rptr. 876].) ■ Similarly, where a plaintiff elects to stipulate to an adverse judgment after evidence is excluded at a preliminary stage, it should be presumed the plaintiff made the strongest foundational showing it was prepared to make, and any uncertainty in the record should be resolved in favor of the court's ruling. It would be ironic indeed to hold that a plaintiff, after deliberately forcing review on an incomplete record, may invoke a standard of reversibility per se on the basis that the record was not sufficiently developed when the court made its rulings.

2.-12.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### III

#### DISPOSITION

The judgment in favor of SCIF on Tudor's first, fifth, eighth and ninth causes of action, and dismissing Tudor's remaining causes of action with prejudice, is affirmed. Costs to respondent.

Ramirez, P. J., and Hollenhorst, J., concurred.

---

*See footnote, *ante*, page 1422.