Filed 4/25/25  Youssef v. County of Los Angeles CA2/4
NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GAMIL YOUSSEF | B332339 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. 22STCV08056 |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rupert A. Byrdsong, Judge. Affirmed.

Gamil Youssef, in pro per., for Plaintiff and Appellant.

BDG Law Group, Michele M. Goldsmith and Michael B. Atkins for Defendant and Respondent.

# INTRODUCTION

Gamil Youssef seeks to enforce a settlement agreement with the County of Los Angeles, his former employer. This is the second time Youssef has sued the County to enforce the same agreement. Youssef brought a first action in 2010. After a jury trial, a trial court entered a judgment against Youssef. That judgment was upheld on appeal. While the appeal was pending, Youssef brought this action. This action seeks to enforce the same provisions of the same settlement agreement at issue in the prior case.[1]

Below, the County invoked the doctrine of claim preclusion (res judicata) and asserted that it barred further proceedings.[2] The trial court agreed and sustained the County's demurrer without leave to amend. We affirm.

Youssef contends claim preclusion does not apply. He argues that his claims arise (at least in part) from facts occurring after entry of judgment in the 2010 action. Therefore, he argues, he could not have litigated those facts in the prior case and should not be prevented by the doctrine of claim preclusion from doing so now. We disagree. Youseff's complaint here makes clear

---

1       We refer to this prior lawsuit as the "2010 case" or the "2010 action."

2       Although the parties use the term "res judicata" to describe the relevant basis for the County's demurrer and the trial court's ruling, "[w]e will follow the current practice to use the term 'claim preclusion' to describe the primary aspect of the res judicata doctrine" applicable here. (*Cal Sierra Development, Inc. v. George Reed, Inc.* (2017) 14 Cal.App.5th 663, 671; see also *Samara v. Matar* (2018) 5 Cal.5th 322, 326 ["We now refer to 'claim preclusion' rather than 'res judicata'"].)

that he seeks redress for the same, continuing wrong underlying his claims in the 2010 case and, consequently, aims to vindicate the same primary right in both actions. Thus, claim preclusion applies.

Youssef also asserts that the trial judge should have been disqualified due to bias. We reject this contention.

## BACKGROUND

In setting forth the background for this appeal, we draw from the opinion by our colleagues in Division One, which affirmed the judgment in the 2010 case. (*Youssef v. County of Los Angeles* (Jul. 15, 2022, B302773, B306187) [nonpub. opn.] (*Youssef*).)[3]

"Youssef worked in the County's Department of Public Social Services [(DPSS)] from 1998 until 2004, when his employment ended. He filed suit against the County, alleging wrongful termination, retaliation, and discrimination. In 2006, the parties reached a settlement agreement under which the County agreed to classify Youssef's termination as a 'voluntary resignation.' In addition, the agreement provided that, '[i]f there is any inquiry by any potential employer . . . [t]he only information the County will give for references will be the date of . . . [his] employment . . . [,] the position that he held . . . [,] [a]nd [his] rate of pay.

"In 2010, Youssef again filed suit against the County for [retaliation, defamation, and] breach of contract . . . , alleging that the County had failed to reclassify his termination in its computer systems, had told prospective employers that he had

---

3     We take judicial notice of this opinion. (Evid. Code, § 452, subd. (d).)

3

been suspended and terminated, and had posted information regarding his termination on the internet. Youssef sought an injunction requiring the County to comply with the settlement agreement, and also demanded damages for lost income and emotional distress, and attorney fees." (*Youssef*, *supra*, B302773, B306187.)

In February 2017, the parties stipulated to dismissal of Youssef's defamation and retaliation claims with prejudice. The trial court accepted the stipulation and dismissed those causes of action per its terms.

Also in 2017, "Youssef filed a motion . . . to require the County to reclassify his termination as a voluntary resignation. In June 2018, the parties entered a joint stipulation in which the County acceded to Youssef's demand, and agreed to provide [him] with a direct contact number for a County human resources employee who could provide potential employers with no more than basic information about his employment with the County." (*Youssef*, *supra*, B302773, B306187.)

"After a trial in 2019, a jury found that Youssef had suffered no damages from the County's failure to reclassify him. The jury also found that the County did not breach the settlement agreement by disclosing information to prospective employers. The [trial] court denied Youssef's motion for a new trial, and entered judgment on the basis of the verdict." (*Youssef*, *supra*, B302773, B306187.) The judgment in the County's favor was entered in October 2019.

In March 2022, Youssef filed the operative complaint in this case, while his appeal in the 2010 case was still pending. Like the complaint filed in the 2010 case, his complaint here

4

asserts claims for retaliation, breach of contract, breach of the covenant of good faith and fair dealing, and defamation.

In support of his claims, Youssef alleges the same alleged breaches and actions at issue in the 2010 case. In addition, and as relevant to this appeal, he also alleges that, in November 2020, he discovered the County still had not changed his "job classification . . . from 'Termination' to 'Voluntary Resignation' . . . ." He also alleges that, on December 7, 2020, he received a letter from the County's counsel stating the County and DPSS "have declined to change [his] status classification from 'Termination' to 'Voluntary Resignation' . . . ."

In May 2022, the County filed a demurrer asserting, among other things, that the case should be abated pending resolution of the appeal in the 2010 case. The next month, the trial court sustained the demurrer and abated the case.

Following the affirmance of the judgment entered in the 2010 case, the County filed another demurrer. This time, it asserted Youssef's complaint should be dismissed without leave to amend because, among other reasons, his causes of action were barred by claim preclusion.

At a hearing held in May 2023, the trial court "agree[d] with the [County] that this case is essentially barred by the doctrine of [claim preclusion]." Thus, it sustained the demurrer without leave to amend. Subsequently, in June 2023, the trial court entered a judgment of dismissal in the County's favor.

Youssef timely appealed.

## DISCUSSION

### I.   Standard of Review

"Because the function of a demurrer is to test the sufficiency of a pleading as a matter of law, we apply the de novo

5

standard of review in an appeal following the sustaining of a demurrer without leave to amend." (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.) "'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## II. Analysis

### A. Claim Preclusion

#### 1. Governing Principles

"The claim preclusion doctrine, formerly called res judicata, 'prohibits a second suit between the same parties on the same cause of action.' [Citation.] 'Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties [or their privies] (3) after a final judgment on the merits in the first suit.'" (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 91.)

"To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the "primary rights" theory.'" (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797.) Under this theory, "[t]he cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." (*Id.* at p. 798.) "'[T]he "cause of action" is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. [Citation.] Even where there are multiple legal theories

6

upon which recovery might be predicated, one injury gives rise to only one claim for relief. "Hence, a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different legal ground for relief." [Citations.]' Thus, under the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." (*Ibid*, italics omitted.)

"[T]he right to performance of a contractual obligation" has been recognized as a primary right. (*Olsen v. Breeze, Inc.* (1996) 48 Cal.App.4th 608, 625.) "It is well established that a judgment in an action for breach of contract bars a subsequent action for additional relief based on the same breach." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 905.)

"As a cause of action is framed by facts in existence when the underlying complaint is filed, [claim preclusion] 'is not a bar to claims that arise after the initial complaint is filed.' [Citations.] For this reason, the doctrine may not apply when 'there are changed conditions and new facts which were not in existence at the time the action was filed upon which the prior judgment is based. [Citations.]'" (*Planning & Conservation League v. Castaic Lake Water Agency* (2009) 180 Cal.App.4th 210, 227; *Allied Fire Protection v. Diede Construction, Inc.* (2005) 127 Cal.App.4th 150, 155 [claim preclusion "is not a bar to claims that arise after the initial complaint is filed"].)

## 2. Analysis

Youssef argues that claim preclusion does not apply because his claims in this action derive (in part)[4] from new facts that arose after judgment in the 2010 action.

Youssef points to the following facts, as alleged in his operative complaint. In November 2020, "he discovered that his job classification was not changed from 'Termination' to 'Voluntary Resignation' as was stated to the jury in the opening statement and during the trial by the County's trial attorney . . . and several County[ ] witnesses . . . ." On December 7, 2020, Youssef alleges, he "received a . . . letter from [the] attorney for [the County and DPSS] . . . inform[ing] [him] that the . . . County and [DPSS] have declined to change [his] status classification from 'Termination' to 'Voluntary Resignation' . . . ."

Standing alone, allegations about events in 2020 are (of course) allegations about events that arose after October 2019, the date of judgment in Youssef's prior action. But—fatally to his argument—Youssef's allegations about events in 2020 are not allegations about a new or discrete wrong caused by the County. Rather, according to Youssef's pleading, he alleges that he discovered additional evidence of the same ongoing wrong that was extensively litigated in the 2010 case.

A core legal wrong in the 2010 action, according to Youssef, was the County's alleged breach of a contractual promise in the 2006 settlement agreement to update his job classification status from "Termination" to "Voluntary Resignation." In this new

---

4       As noted above, much of Youssef's pleading in this case simply restates, identically, allegations made in the 2010 case. Youssef does not contend otherwise, and we focus here on allegations not made in the 2010 case.

8

action, Youssef alleges that he received new information about that same ongoing wrong—i.e., that he learned in 2020 that the County had never, at any relevant time, corrected the allegedly improper classification.  He avers that the letter he received in December 2020 was "proof that the County failed again to comply [with] . . .  the terms of the settlement agreement [entered] on August 10, 2006," as well as the July 2018 stipulation.

Critically, Youssef alleges that he discovered in 2020 that statements made by the County's trial attorney and its witnesses in the 2010 case about the change in classification were "false and fraudulent" when made in that case.  According to Youssef, he learned in 2020 that:  (1) the County's trial attorney and its witnesses "knowingly gave false and fraudulent testimonies and statements to mislead the jury and the trial court at the trial [in the 2010 action] regarding the correction of [his] classification"; and (2) as of November 2020, the County had yet to comply with the parties' June 2018 stipulation filed in the 2010 action.  Put differently, Youssef alleges that he learned in 2020 that the County had at all relevant times, including the time of trial in the 2010 case, continuously failed to update his classification status from "Termination" to "Voluntary Resignation."  Thus, Youssef's allegations about 2020 do not describe a new breach or new legal violation.  Rather, he alleges that he gained new information about the original, and allegedly ongoing, wrong at the heart of the 2010 action.

That means that Youssef's allegations about 2020 do not allow him to avoid the doctrine of claim preclusion.  When two actions "involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff . . . adds new facts

supporting recovery[,]" "pleads different theories of recovery, [or] seeks different forms of relief . . . .'" (*Eichman v. Fotomat Corp.* (1983) 147 Cal.App.3d 1170, 1174 (*Eichman*).) Moreover, claim preclusion "not only bars issues actually litigated but also bars issues that *could have been* litigated, as long as the later-raised issues constitute the same cause of action involved in the prior proceeding."[5] (*Atwell v. City of Rohnert Park* (2018) 27 Cal.App.5th 692, 698.) Since Youssef clearly could have litigated the issue of the County's allegedly false statements in the prior proceeding, claim preclusion applies.

In a separate and independent argument, Youssef argues that his defamation and retaliation causes of action in this case are not claim-precluded because he voluntarily dismissed those causes of action with prejudice in the 2010 case by stipulation before trial. He argues that since these causes of action were voluntarily dismissed and not adjudicated against him after trial, claim preclusion does not apply.

---

5  Youssef's allegations about false statements made in the 2010 case appear to be allegations of intrinsic fraud in that case, although Youssef does not use the words "intrinsic fraud" or make this argument directly. (See *Pour Le Bebe, Inc. v. Guess? Inc.* (2003) 112 Cal.App.4th 810, 828 ["'the introduction of perjured testimony . . . in a fully litigated case'" is a "classic example[ ] of intrinsic fraud"].) We note that a judgment does not lose its claim preclusive effect merely because of alleged intrinsic fraud in the prior case due to evidence suppression. (*Eichman, supra*, 147 Cal.App.3d at p. 1176 ["a judgment does not lose its res judicata effect because it was entered while evidence was being suppressed"].) That is another reason why Youssef's allegations about his discoveries in 2020 do not allow him to avoid the doctrine of claim preclusion.

This argument misapprehends the doctrine of claim preclusion. Claim preclusion also applies to voluntary dismissals with prejudice (sometimes known as a "retraxit"). "At common law, a 'retraxit' was 'an open and voluntary renunciation of the suit in open court.'" (*Rice v. Crow* (2000) 81 Cal.App.4th 725, 733.) A "dismissal with prejudice is the modern name for a common law retraxit." (*Ibid.*) A retraxit, in turn, "is a judgment on the merits preventing a subsequent action on the dismissed claim." (*Ibid.*) In other words, "'[a] dismissal with prejudice [is] a retraxit constituting a decision on the merits invoking the principles of [claim preclusion].'" (*Id.* at p. 734.)[6]

Consequently, the action here is barred by claim preclusion. The trial court correctly sustained the County's demurrer without leave to amend.

---

[6] In his reply brief, Youssef also argues that his counsel executed the stipulation to dismiss those claims (which was entered in 2017) without his consent. Thus, he argues, he did not dismiss his retaliation and defamation claims voluntarily. We reject this argument because it is based on documents that are not part of the appellate record. (See *Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 546, fn. 1 [disregarding exhibit attached to respondent's brief because the exhibit was not a part of the record on appeal].) In addition, we note that any disputes regarding the validity of the claims' dismissal should have been raised in the 2010 action. (*Colebrook v. CIT Bank, N.A.* (2021) 64 Cal.App.5th 259, 264 ["'[Claim preclusion] bars "not only the reopening of the original controversy, but also subsequent litigation of all issues which were or could have been raised in the original suit"'"].)

## B.  Judicial Bias

Youssef also contends reversal is required because the trial judge was biased and subject to disqualification based on events occurring in a different, unrelated case after the judgment of dismissal was entered in this case.

We reject this contention as forfeited.[7]  "Bias and prejudice are grounds for disqualification of trial judges.  ([Code Civ. Proc.,] § 170.1, subd. (a)(6).  And if judges fail to recuse themselves, there is a statutory procedure to litigate the issue. ([Code Civ. Proc.,] § 170.3.)" (*Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1218 (*Moulton*).)  Here, the record does not indicate that Youssef "t[ook] advantage of these procedures" (*ibid*) by filing a motion for disqualification "at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification." (Code Civ. Proc., § 170.3, subd. (c)(1).)  Indeed, the record does not contain any evidence supporting Youssef's assertions that he asked the trial judge to recuse himself.  Nor does the record suggest that Youssef brought a motion for disqualification of the trial judge pursuant to Code of Civil Procedure section 170.3.  Youssef points to documents outside of the record[8] suggesting that he sought to raise an issue of judicial bias with the presiding judge of the trial court below.

---

7     The briefs do not address whether Youssef forfeited his judicial bias argument on appeal.  Consequently, on February 28, 2025, we requested supplemental briefing on the issue pursuant to Government Code section 68081.

8     Youssef's supplemental brief improperly attached as exhibits several documents that are not a part of the appellate record, which we decline to consider.  (See *Hodge v. Kirkpatrick Development, Inc., supra*, 130 Cal.App.4th at p. 546, fn. 1.)

12

But these efforts were insufficient to demonstrate that he brought the trial judge's potential bias to his attention or otherwise sought relief in the trial court based thereon.  Thus, on the record before us, we conclude that Youssef failed to preserve his judicial bias claim for appellate review.  (*Moulton*, at p. 1218; *People v. Scott* (1997) 15 Cal.4th 1188, 1207 ["It is too late to raise the issue [of judicial bias] for the first time on appeal"].)  We therefore need not address it on the merits.

Regardless, we have reviewed Youssef's judicial bias arguments, along with the documents of which he asked us to take judicial notice in support thereof.[9]  Having done so, we discern no evidence of judicial bias, let alone judicial bias rising to the "exceptionally stringent standard" required "to find judicial bias amounting to a due process violation."  (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 589.)

_____

[9]  Youssef's request for judicial notice, filed May 6, 2024, is hereby granted.

13

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

DAUM, J.*

We concur:

ZUKIN, Acting P. J.

MORI, J.

---

* Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article IV, section 6 of the California Constitution.