Filed 10/13/25  Sonichsen v. Ascentium Capital CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| WILLIAM SONICHSEN et al., | |
| Cross-complainants and Appellants, | G063221 |
| v. | (Super. Ct. No. 30-2019-01073663) |
| ASCENTIUM CAPITAL, LLC, | O P I N I O N |
| Cross-defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Nick A. Dourbetas, Judge. Affirmed.

Carlsen Law Corporation and Miles Carlsen for Cross-complainants and Appellants.

Frandzel Robins Bloom & Csato, Andrew K. Alper and Hal D. Goldflam for Cross-defendant and Respondent.

\*          \*          \*

Appellants Douglas Pientock and William Sonichsen appeal from a judgment awarding contractual attorney fees to respondent Ascentium Capital, LLC (Ascentium).[1] Appellants raise three arguments on appeal. First, they contend Ascentium did not identify a contractual basis for its fee request. Second, appellants argue they are not liable for attorney fees under the relevant lease and guaranty provision. Third, they claim Ascentium's reliance on the applicable lease is barred by the doctrine of retraxit. For the reasons *infra*, we disagree with appellants' contentions and affirm the judgment.

FACTS

I.

THE LEASE AGREEMENT, GUARANTY, AND ASSIGNMENT

In 2014, Yellow Dog Holdings, LLC (Yellow Dog) entered into an equipment lease agreement with Alliance Funding Group (Alliance), a non-party to this appeal, whereby Yellow Dog leased a paint booth. Appellants personally guaranteed Yellow Dog's obligations under the lease by signing a "Lease Guaranty" provision contained within the lease. The guaranty included the following attorney fees provision, which is central to the instant appeal: "I will reimburse all expenses [Alliance] incur[s] in enforcing [its] rights against [Yellow Dog] or me, including, without limitation, attorney's fees and costs."

Early in the lease term, Alliance assigned its rights under the lease to Ascentium. Among other things, the assignment authorized

_____

[1] Respondent Regions Bank is the successor to Ascentium. For clarity and consistency with the appellate briefing, we refer to the entity throughout this opinion as "Ascentium."

2

Ascentium to "take all legal or other proceedings which [Alliance] could have taken with respect to the Assigned Contract and related documents, including, without limitation the enforcement of rights and remedies under the Assigned Contract following an event of default thereunder."

## II.

### THE COMPLAINT AND CROSS-COMPLAINT

Alliance filed a complaint against Yellow Dog and appellants, alleging causes of action for breach of the lease and written guaranty. According to Alliance, Yellow Dog did not provide timely written notice of its intent to purchase or return the equipment as required under the lease, triggering an automatic 12-month renewal of the lease. Yellow Dog allegedly defaulted on its payment obligations and refused to return the equipment to Alliance.

Yellow Dog and appellants filed a second amended cross-complaint (SACC) against Alliance and Ascentium, alleging two causes of action for declaratory relief. Ascentium demurred to the SACC, and the trial court sustained the demurrer without leave to amend. Ascentium then moved for entry of a separate judgment in its favor because all claims to which it was a party had been resolved by the demurrer. The court granted the motion and entered judgment in 2020. Yellow Dog and appellants timely appealed.

## III.

### ASCENTIUM'S FIRST MOTION FOR ATTORNEY FEES

After the 2020 judgment, Ascentium filed a motion seeking to recover its attorney fees from Yellow Dog and appellants. In 2021, the court awarded $36,339 in attorney fees to Ascentium.

IV.

THE COURT OF APPEAL DECISION REGARDING ASCENTIUM'S DEMURRER

In March 2022, another panel of this court held the trial court erred by sustaining Ascentium's demurrer to Yellow Dog's claims in the SACC but properly sustained the demurrer as to appellants. (*Yellow Dog Holdings, LLC v. Ascentium Capital, LLC* (Mar. 3, 2022, G059835) [nonpub. opn.] (*Yellow Dog I*).)[2]

V.

ASCENTIUM'S SECOND MOTION FOR ATTORNEY FEES

On remand, Ascentium filed a motion for attorney fees seeking to recover fees it incurred defending against appellants' appeal in *Yellow Dog I*, *supra*, G059835. The motion was based on the attorney fees provision contained in the lease's guaranty and Alliance's assignment of its rights to Ascentium.

In December 2022, the trial court granted the motion and awarded $30,975.10 in attorney fees to Ascentium. The court explained: "[Appellants'] personal guarantees waived the right to assert limited or no liability if Yellow Dog is found to lack liability in the trial of the cross-complaint."

---

[2] Appellants filed a request for judicial notice asking that we take judicial notice of: (1) our unpublished opinion in *Yellow Dog I*, *supra*, G059835; (2) Ascentium's discovery responses contained in the appellate record in *Yellow Dog I*, *supra*, G059835; and (3) excerpts of trial testimony contained in the appellate record in *Yellow Dog Holdings, LLC v. Ascentium Capital, LLC* (Sept. 22, 2025, G063976). We grant appellants' unopposed request for judicial notice.

4

In August 2023, the court entered judgment in Ascentium's favor and dismissed the SACC with prejudice. The latter judgment provided for Ascentium to recover from appellants: (1) $36,339 in contractual attorney fees pursuant to the 2021 order; and (2) $30,975.10 in contractual attorney fees pursuant to the 2022 order.

Appellants timely appealed from the August 2023 judgment.

## DISCUSSION

Appellants challenge the August 2023 judgment only insofar as it incorporates the December 2022 fee award of $30,975.10 in favor of Ascentium.[3] They contend the award is legally unsupportable because: (1) Ascentium did not identify any contractual basis for attorney fees; (2) appellants are not liable under the lease or guarantees for attorney's fees; and (3) in any event, Ascentium's reliance on the lease is barred by the retraxit doctrine. We disagree with appellants' contentions.

## I.

### STANDARD OF REVIEW

"On appeal, a determination of the legal basis for an attorney fees award is reviewed de novo as a question of law. [Citation.] [¶] Each party to a lawsuit must pay his or her own attorney fees except where a statute or contract provides otherwise. [Citation.] Where a contract specifically provides for an award of attorney fees, Civil Code section 1717 allows recovery of

---

[3] Appellants' opening brief does not raise any challenge to the trial court's 2021 attorney fees award of $36,339, which was incorporated into the August 2023 judgment. Appellants' attempt to do so for the first time in their reply brief is too late. (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1295.) We therefore affirm that portion of the judgment without further discussion.

attorney fees by whichever contracting party prevails, regardless of whether the contract specifies that party." (*Cargill, Inc. v. Souza* (2011) 201 Cal.App.4th 962, 966.)

## II.

### ASCENTIUM ESTABLISHED A CONTRACTUAL BASIS FOR ATTORNEY FEES

Appellants contend Ascentium did not establish a contractual basis for the attorney fees award for several reasons. First, they argue Ascentium's notice of motion did not identify any relevant contract. But a notice of motion need only state the nature of the relief sought and the grounds upon which it is made. (Code Civ. Proc., § 1010;[4] Cal. Rules of Court, rule 3.1110). The notice here did precisely that: it cited Civil Code section 1717, sections 1021, 1032, and 1033.5, subd. (a)(10)(A), and California Rules of Court, rules 3.1702(c) and 8.278(d)(2). The notice also explained that Ascentium sought appellate attorney fees as the prevailing party "pursuant to the parties' contracts" and referenced the supporting memorandum and declarations. The memorandum, in turn, identified and attached the relevant lease and assignment. Finally, appellants filed a substantive opposition, which confirmed they understood the relief sought and its contractual basis. Under these circumstances, the notice was sufficient.

Second, appellants claim the second motion for attorney fees was "defective" because it did not identify a 2011 master discounting agreement (MDA) between Alliance and Ascentium. They assert the MDA was central to the parties' contractual relationship and the assignment. Appellants forfeited

---

[4] All further statutory references are to the Code of Civil Procedure.

6

this contention by failing to raise it below.[5] (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1074; *Natkin v. California Unemployment Ins. Appeals Bd.* (2013) 219 Cal.App.4th 997, 1011.) Even assuming it is preserved for review, it lacks merit. Appellants point to no law, and we are aware of none, requiring a party seeking contractual attorney fees to attach every agreement relevant to the contractual relationship. In any event, to the extent the MDA was material to the fee analysis, appellants themselves discussed the MDA and submitted it in their filings below.

There also is no merit to appellants' related argument that Ascentium did not "hitch" the assignment to the lease's attorney fees provision. Ascentium's motion for attorney fees quoted and attached the assignment, which transferred Alliance's rights under the lease and guaranty, including the right to "take all legal and other proceedings" to enforce those contracts, to Ascentium. The motion also cited the attorney fees provision contained in the lease's guaranty. Thus, contrary to appellants' assertion, the motion did connect or "hitch" the assignment to the attorney fees provision.

Finally, appellants suggest, without meaningful analysis, that Ascentium relied on a different contract in its second fee motion than in its first motion. Not so. The second motion, like the first, relied on the lease and guaranty as assigned to Ascentium.

For the foregoing reasons, Ascentium adequately identified a contractual basis for its attorney fees request.

---

[5] Appellants did not raise their argument about the omitted MDA in their briefing below, and the appellate record does not include a reporter's transcript of the relevant proceedings.

## III.

### APPELLANTS ARE LIABLE FOR ATTORNEY FEES UNDER THE GUARANTY

Appellants next argue they are not liable for attorney fees under the lease guaranty because Yellow Dog did not owe any money to Alliance after prevailing in *Yellow Dog I*, *supra*, G059835. This argument misreads the guaranty.

The guaranty is not limited to guaranteeing Yellow Dog's performance under the lease. Rather, appellants expressly agreed to "reimburse all expenses [the lessor] incur[s] in enforcing [its] rights against [Yellow Dog] *or [appellants], including, without limitation, attorney's fees and costs*." (Italics added.) This obligation is independent of Yellow Dog's liability and arises whenever the lessor incurs expenses to enforce its rights against appellants. Alliance (the lessor) assigned its rights, including the right to enforce the guaranty, to Ascentium (the assignee). The assignment specifically authorized Ascentium to "take all legal or other proceedings which [Alliance] could have taken with respect to the Assigned Contract and related documents, *including, without limitation*, the enforcement of rights and remedies under the Assigned Contract following an event of default thereunder." (Italics added.) The phrase "including, without limitation," confirms that Ascentium's enforcement rights are not confined to circumstances where Yellow Dog actually defaulted. And, as noted *ante*, the guaranty itself imposes an independent obligation to reimburse attorney fees regardless of Yellow Dog's liability under the lease.

In their reply brief, appellants also assert that Ascentium released Yellow Dog and appellants from the lease and guarantees pursuant to an October 2018 payoff letter. Appellants' failure to raise this argument in

8

the opening brief forfeits the issue on appeal. (*Provost v. Regents of University of California, supra*, 201 Cal.App.4th at p. 1295.)

In short, appellants are liable for attorney fees under the lease's guaranty provision.

## IV.

### RETRAXIT IS INAPPLICABLE

Relying on the doctrine of retraxit, appellants further contend Ascentium cannot rely on the lease "in any respect" because Alliance dismissed its complaint with prejudice. Appellants forfeited this argument because they did not raise it in the trial court proceedings.[6] (*Delta Stewardship Council Cases, supra*, 48 Cal.App.5th at p. 1074; *Natkin v. California Unemployment Ins. Appeals Bd.*, *supr*a, 219 Cal.App.4th at p. 1011.) Regardless, a retraxit—now typically effected by a plaintiff's voluntary dismissal with prejudice—is deemed a judgment on the merits barring further litigation on the same claim between the same parties. (*Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133 Cal.App.4th 1319, 1330–1331; *Morris v. Blank* (2001) 94 Cal.App.4th 823, 828; *Rice v. Crow* (2000) 81 Cal.App.4th 725, 733–734.) While Alliance's dismissal may preclude it from pursuing further claims under the lease, the doctrine of retraxit has no application to Ascentium, which did not dismiss any claims. Appellants cite no authority, and we are aware of none, holding Alliance's dismissal extinguished Ascentium's contractual rights to recover attorney fees.

---

[6] Appellants did not raise the retraxit doctrine in their briefing below, and as noted *ante*, the appellate record does not include a reporter's transcript of the relevant proceedings.

9

## DISPOSITION

The judgment is affirmed. Ascentium shall recover its costs incurred on appeal.


SANCHEZ, J.

WE CONCUR:


MOORE, ACTING P. J.


SCOTT, J.